FILED

2016 Aug-11  PM 05:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| **MICHAEL SHANE ADAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 3:15-CV-814-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Michael Adams ("Mr. Adams") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Mr. Adams timely pursued and exhausted his administrative remedies available before the Commissioner. The case

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

is thus ripe for review under 42 U.S.C. § 405(g).[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Adams was forty-six years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (Tr. 28, 217). He has completed the tenth grade. (Tr. 35). His past work experience includes employment as a commercial truck driver. (Tr. 286). He claims he became disabled on February 15, 2012, due to lower back injury. (Tr. 113). His last period of work ended on February 15, 2012. (Tr. 257). Mr. Adams's date last insured is December 31, 2016. (Tr. 113).

On February 28, 2012, Mr. Adams protectively filed a Title II application for a period of disability and DIB. (Tr. 215). He also protectively filed a Title XVI application for SSI on March 5, 2012. (Tr. 219). On April 27, 2012, the Commissioner initially denied these claims. (Tr. 135-41). Mr. Adams timely filed a written request for a hearing on May 2, 2012. (Tr. 142-44). The ALJ conducted two hearings on the matter, the first hearing was held on June 26, 2013, and the second supplemental hearing was held on December 16, 2013. (Tr. 73, 26). On January 9, 2014, he issued his opinion concluding Mr. Adams was not disabled and denying him benefits. (Tr. 20).  Mr. Adams timely petitioned the Appeals Council to review the

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

decision on January 22, 2014. (Tr. 5). On March 17, 2015, the Appeals Council issued a denial of review on his claim. (Tr. 1-3).

Mr. Adams filed a Complaint with this court on May 18, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on September 11, 2015. (Doc. 7). Mr. Adams filed a supporting brief (Doc. 11) on November 24, 2015, and the Commissioner responded with her own (Doc. 12) on December 22, 2015. With the parties having fully briefed the matter, the court has carefully considered the record and reverses the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial

evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)   whether the claimant can perform his or her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

5

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.   Mr. Adams met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 11).

2.   He had not engaged in substantial gainful activity since February 15, 2012, the alleged disability onset date. *Id.*

3.   He had the following severe impairments: "chronic back pain secondary to failed back surgery syndrome, chronic pain syndrome, post laminectomy syndrome, status post arthroscopic laminectomy and discectomy at L4-5 and L5-S1 level, status post decompression fusion at the L4-5 and L5-S1 level." *Id.*

4.   He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12).

5.   He had the residual functioning capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). *Id.*

6.   He was unable to perform any past relevant work. (Tr. 18).

7.   He was born on July 23, 1967, and was 44 years old, which is defined as younger individual 18-49, on the alleged disability date. *Id.*

8.   He had a limited education and is able to communicate in English. *Id.*

9.   Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework

supported a finding that he was "not disabled," whether or not he had transferable job skills. *Id.*

10.    Considering his age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform. *Id.*

11.    Mr. Adams had not been under a disability, as defined in the Social Security Act, from February 15, 2012, through the date of this decision. (Tr. 19).

12.    Both Mr. Adams's DIB and SSI claims were denied. (Tr. 20).

## ANALYSIS

## I.    Introduction

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

The court has carefully reviewed the record and finds that this case should be

---

[4] *Strickland* is binding precedent in this Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

remanded for further development. The ALJ's decision is not supported by substantial evidence because (1) the ALJ failed to properly discredit Dr. Mark Murphy ("Dr. Murphy"), and (2) the ALJ improperly relied on a non-examining physician's opinion for his disability determination. While the court has endeavored to separate the issues into their respective subparts, it recognizes the overlap and interrelated nature of these findings.

## II.    The ALJ Did Not Properly Discredit Dr. Murphy's Treating Source Opinions.

It is well settled in the Eleventh Circuit that the ALJ must state specifically the weight accorded to each item of evidence and the reasons for his decision. *See Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) ("The ALJ has simply not indicated what legal standards were applied or what weight was accorded [to] the evidence considered"); *Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision."); *Hudson v. Heckler*, 755 F. 2d 781, 785-86 (11th Cir. 1985) (same). The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor and the failure to do so adequately is reversible error. *Shafarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Generally, a treating physician's opinion will be given substantial weight in

determining disability. *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). At the same time, an ALJ is free to reject a treating physician's opinion. However, he must "clearly articulate the reasons for giving less weight to the opinion of a treating physician, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th 1986); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (explaining that a treating physician's opinion "must be given substantial or considerable weight unless good cause is shown to the contrary"). Further, the ALJ's reasons for discrediting a treating physician's opinion must be supported by substantial evidence. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

In Mr. Adams's case, the ALJ attempted to discredit Dr. Murphy's opinions on the grounds that Dr. Murphy provided two RFC determinations that were not identical. Dr. Murphy issued the first RFC in May 2013 and the second one in December 2013. (Tr. 579, 602). Both RFCs are restricted to a degree that would preclude Mr. Adams from gainful employment. In a letter dated May 3, 2013, Dr. Murphy opined that Mr. Adams should avoid:

> lifting weight greater than 10 pounds; prolonged standing greater than 15 minutes; prolonged walking no greater than 15 minutes if tolerated; sit/stand as needed for paresthesia. In an 8 hour day the usual recommendations are 1 to 2 hours standing, if tolerated, 15 to 30 minutes walking, if tolerated, and up to 4 hours for sitting if required.

(Tr. 579).

Additionally, Dr. Murphy stated Mr. Adams's narcotic use for his pain management would impair his concentration. Dr. Murphy further opined that repetitive manual labor would aggravate Mr. Adams's back pain and lead to Mr. Adam's need for the additional use of narcotics to manage his pain. *Id.*

Seven months later in December 2013, Dr. Murphy issued a medical source opinion[5] that stated Mr. Adams could frequently lift ten pounds and carry fifteen pounds and occasionally lift twenty pounds and carry twenty-five pounds. (Tr. 602).[6] Further, Dr. Murphy opined Mr. Adams could stand for twenty minutes at a time and 2-3 hours out of a work day, walk for ten minutes at a time and 1-2 hours out of a work day, and sit for twenty minutes and 2-3 hours out of a work day. *Id.* The ALJ claimed that these slight variances in function provided good cause to discredit Dr. Murphy's medical findings favorable to Mr. Adams's disability claims. However, an hour difference in limitations or other minimal differences is not consistent with the type of contradictions used to sufficiently discredit a treating physician. *Cf. Jones v.*

---

[5] A medical source opinion is a statement from a physician, psychologist, or other acceptable medical source that reflects judgments about the nature and severity of a claimant's impairment(s), including symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2).

[6] Standing alone Dr. Murphy's weight restrictions would classify Mr. Adams as capable of performing Light Work as defined in 20 C.F.R. § 404.1567(b). However, the additional limitations diagnosed by Dr. Murphy such as needed breaks and lack of concentration would render Mr. Adams unemployable. (Tr. 109).

*Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 ("Dr. Freeman's reports are contradicted by several physicians . . . Perhaps even more significant is Dr. Freeman's apparent agreement with Dr. Sparks that, in Dr. Sparks' words, there is nothing to prevent appellant from working at a 'sitting type job'"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (Only three weeks after concluding that Crawford was unable to work due to lower back pain, Dr. Ruiz noted that Crawford was 'improved' and 'doing well' and that he had stated 'I'm doing great.'"). Also, a slightly less restricted RFC does not support wholly discrediting Dr. Murphy's opinions because such a change in Mr. Adams's overall functioning simply reflects a gradual improvement over a seven month period.

The Commissioner states the ALJ was correct in discrediting Dr. Murphy because "if a treating physician is unsure of the accuracy of his findings and statements, there is certainly no legal obligation for the ALJ to defer to the treating physician's report." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). However, in *Edwards*, more than mere slight inconsistencies in the physician's report existed, as the physician "candidly conceded that he was not sure that he could objectively assess Claimant Edwards' condition." *Id.* Additionally, the discrepancies in the physician's report were differences of four hours in work limitations in the span of <u>less than a week</u>, 937 F.2d at 548, versus in Mr. Adams's case in which the slight

improvements occurred over a seven month period and such results are entirely consistent with an effective pain treatment regimen.

Additionally, the Commissioner directs the court to the unpublished Eleventh Circuit decision of *Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783 (11th Cir. 2015), in which an ALJ's decision to discredit a treating physician was supported by substantial evidence. *Hacia*, 601 F. App'x at 785. However, in *Hacia*, the physician's RFC was internally inconsistent with a report issued the same day as the RFC. *Id.* Further, there was evidence that the physician "observed in his treatment notes that Hacia had been experiencing monthly breakdown seizures but he and his mother had not been promptly reporting them to [the physician] because they were hoping Hacia would qualify for disability and did not think he would qualify unless he was having regular seizures." *Id.* at 785 n.1. The Commissioner does not point to similar conflicting evidence here and based upon this court's independent review, no such comparable evidence exists in Dr. Murphy's treatment records.

Turning to the ALJ's rejection of Dr. Murphy's opinion because of its claimed conclusory nature, the ALJ improperly disregarded several years worth of treatment records based upon one statement made by Dr. Murphy. The Eleventh Circuit has emphasized that a "treating physician's report may be discounted when it is not accompanied by objective medical evidence or is <u>wholly</u> conclusory." *Edwards*, 937

F.2d at 583 (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)) (emphasis added); *see Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (Explaining that "good cause exists when . . . treating physician's opinion was conclusory or inconsistent with the doctor's own medical records").[7] Here, it is a reversible overreach for the ALJ to characterize over two years of treatment records as <u>wholly</u> conclusory because in one sentence of the May 2013 letter, Dr. Murphy opined that "[g]ainful employment is not likely" for Mr. Adams. (Tr. 579). While the ALJ is not obligated to accept this vocational conclusion standing alone, he cannot disregard Dr. Murphy's entire treatment history of Mr. Adams simply because of the statement. *Cf. Moss v. Colvin*, 2016 WL 1046656, at *4 (N.D. Ala. 2016) ("[I]t is worth noting that presence of a 'permission slip' in the record does not mean that the opinion should be ignored. Instead, it should simply be treated like any other evidence.").

Moreover, the court finds that the other reasons provided by the ALJ to discredit Dr. Murphy's opinions are insufficient. The ALJ stated "[g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. However, it was not until the doctor was asked by the claimant's

---

[7] Although *Phillips* only says "conclusory," 357 F.3d at 1241, the Eleventh Circuit cites to *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) in *Phillips*, which in turn relies on *Schnorr*.

attorney that he gave limitations . . ." (Tr. 15). However, the Eleventh Circuit has held that a physician's silence regarding work limitations is not sufficient to discredit a disability claim because "such silence is equally susceptible to either inference, therefore, no inference should be taken." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

Similarly, the ALJ utilized Mr. Adams's daily activities to discredit his claims for disability and Dr. Murphy's findings. (Tr. 15). The ALJ stated the claimant could: care for his personal needs independently;[8] "prepare[] frozen dinners, sandwiches, and cereal for himself daily;" go "outside two to three times per day;" operate a vehicle to drive to the grocery store;[9] pay his bills and balance a checkbook; watch television; and read. (Tr. 15). The ALJ opined "that these activities are inconsistent with the claimant's allegation of disabling pain and dysfunction." *Id.* However, the Eleventh Circuit has previously held "[we do not] believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability." *Lewis*, 125 F.3d at 1441; *see also Flynn v. Heckler*, 768

---

[8]  The Court notes discrepancies with regards to Mr. Adams being able to dress and care for himself. Mr. Adams stated at the first evidentiary hearing that his wife had to help dress him and even assist him when going to the restroom. (Tr. 77-78). *But see* (Tr. 38). However, the court believes this is reconciled because at the time of the second evidentiary hearing, Mr. Adams was no longer living with his wife. (Tr. 40).

[9]  Mr. Adams stated the grocery store was "a mile from where [he] is staying." (Tr. 36).

14

F.2d 1273, 1275 (11th Cir. 1985) (ALJ erred by discrediting claimant because she was "able to read, watch television, embroider, attend church, and drive any automobile short distances" in addition to performing "housework, light cooking, and light grocery shopping").

To the extent the ALJ relied upon Dr. Alan Levine's ("Dr. Levine") non-examining opinion to discredit Dr. Murphy,[10] Dr. Levine's testimony from the hearing cannot satisfy the good cause requirement. Dr. Levine testified to what he perceived to be inconsistencies in Mr. Murphy's treatment records and, based upon his experience, Dr. Levine opined that Mr. Adams pain "seem[ed] to be a little more than I would expect." (Tr. 58-61, 62). In addition, Dr. Levine testified that, based upon his paper review, he would not have limited Mr. Adams as severely as Dr. Murphy had, in either the May or December 2013 RFC. (Tr. 60-61). However, a non-examining physician cannot satisfy the "good cause" requisite needed to reject a treating physician's opinion. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

Furthermore, the ALJ accepted Dr. Levine's non-examining testimony and expressly discredited the opinion of Dr. Murphy because "Dr. Levine felt the statement by Dr. Murphy that the claimant was not likely to work <u>appears</u> primarily

---

[10] As discussed *infra*, Dr. Levine is a Board Certified Orthopaedic Surgeon who testified at Mr. Adams's disability hearing, but who never examined, much less treated Mr. Adams.

based upon the subjective complaints of pain." (Tr. 17) (emphasis added). The ALJ's adoption of Dr. Levine's testimony cannot, without more, constitute good cause for rejecting Dr. Murphy's vocational opinions about Mr. Adams. *Broughton*, 776 F.2d at 962. In addition, Dr. Murphy's December 2013 RFC clearly reflects that he has not "completed this form based primarily on the claimant's subjective complaints" (Tr. 603) and includes detailed references to underlying medical records and further medical explanations to substantiate his opinion. (Tr. 602-10). Therefore, the record does not provide substantial evidence to support the ALJ's conclusion that Dr. Murphy's opinion was based primarily on Mr. Adams's subjective complaints.

When determining weight afforded to a treating physician, the ALJ should consider the following: the examining relationship, the treatment relationship, including length of the treatment relationship and nature and extent of the treatment relationship, supportability by the evidence, consistency, specialization, and any other factors that support or contradict the doctor's opinion. 20 C.F.R. § 404.1527(c). The ALJ's decision ignores the strength of the treating relationship between Dr. Murphy and Mr. Adams. Dr. Murphy had not only examined Mr. Adams, but had examined Mr. Adams on a monthly basis starting in August 2011, a date preceding Mr. Adams's alleged disability onset date of February 15, 2012, through December 2013, totaling thirty-two visits on the record. (Tr. 490-532, 560-77, 612-39). Such a treatment

relationship represents the consistency and length of treatment one would expect from a patient suffering from severe pain. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) ("The opinion, diagnosis, and medical evidence of the treating physician, underline especially when the consultation has been over a considerable period of time, should be accorded considerable weight." (citing *Perez v. Schweiker*, 986 F.2d 997, 1001 (5th Cir. 1981) (emphasis added))). Further, Dr. Murphy should be afforded additional weight because he is a pain specialist and, an inability to work because of pain is Mr. Adams's chief complaint. Thus, the ALJ did not properly discount Dr. Murphy's treating source opinions.

### III.   The ALJ's Decision is Not Supported by Substantial Evidence Because the ALJ Improperly Relied Solely on Dr. Levine's Non-Examining Opinion Testimony.[11]

The opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle*, 914 F.2d at 226 n.3 (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). When the opinion of an examining physician is compared with an opinion of a non-examining physician, "[t]he opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician."

---

[11] The following framework, analysis, and disposition persuasively flow from the undersigned's decision in *Grier v. Colvin*, 117 F. Supp. 3d 1335, 1353-54 (N.D. Ala. 2015).

*Broughton*, 776 F.2d 962 (internal quotation omitted).

However, an ALJ may accord substantial weight to the opinion of a non-examining physician if the opinion is consistent with examining physician reports. *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) ("[T]he report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence. . . . Our task, then, is to compare the three reports and determine whether [the non-examining doctor]'s report disagrees with the [examining doctors' reports]." (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093-94 (11th Cir. 1985))). Reports from non-examining sources must also be supported by other evidence in the record. *See* 20 C.F.R. § 404.1527(d)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with [the claimant], the weight will depend on the degree to which [the physicians] provide supporting explanations for their opinions[.]"). These opinions will be evaluated by "the degree to which these opinions consider all of the pertinent evidence in [the claimant's] claim, including opinions of treating and other examining sources." *Id.*

In Mr. Adams's case, the ALJ gave "great weight to the opinions of the Medical Expert, Dr. Alan Levine[,]" a Board Certified Orthopaedic Surgeon who testified at Mr. Adams's disability hearing. (Tr. 16). Dr. Levine was not one of Mr.

18

Adams's treating or examining physicians and, previous to the evidentiary hearing, had never seen Mr. Adams. (Tr. 48). Based upon his paper review of the record, Dr. Levine testified that:

> orthopedically and objectively the claimant should be capable of lifting occasionally 20 pounds, frequently 10. [He] felt [Mr. Adams] should be able to sit six out of eight hours, with customary breaks. [Dr. Levine] felt [Mr. Adams] should be able to stand four out of eight hours, but [he] felt not longer than 30 minutes at one time, without the ability of sitting for one to two minutes. [Dr. Levine] thought he should be able to walk two out of eight hours, but not longer than 40 minutes at one time without the ability of sitting through one to two minutes. And [Dr. Levine] thought [Mr. Adams] should avoid uneven surfaces. [He] thought [Mr. Adams] could occasionally navigate stairs or ramps with a railing, could occasionally kneel, occasionally crouch, stoop or bend, but not repetitively. [He] thought [Mr. Adams] should be able to avoid–or should avoid–ladders, scaffolds, crawling, heavy laboratory machinery, unprotected heights, and extreme cold expose. [Dr. Levine] thought [Mr. Adams] should avoid any type of activity requiring repetitive twisting. . . . [Dr. Levine] felt [Mr. Adams] really had unlimited use of the upper extremities for fine and gross manipulation. However . . . [Mr. Adams] should avoid doing any type of keyboarding for longer than 30 minutes at one time, without the ability of changing that position for one to two minutes.

(Tr. 60-61).

Here, Dr. Levine's opinion testimony was against the weight of the evidence provided by Dr. Murphy, especially as Dr. Murphy indicated that his December 2013 RFC did <u>not</u> primarily factor in Mr. Adam's subjective pain allegations. (Tr. 603). Additionally, while Dr. Levine testified about the inconsistencies he found in Dr.

Murphy's RFC determinations, Dr. Levine never tied his own less-restrictive RFC for Mr. Adams to any specific evidence contained in the record. Therefore, because Dr. Levine's testimony fails to provide an adequate explanation to support his RFC formulation, it was improper for the ALJ to rely upon it to support his disability decision. Furthermore, as Dr. Levine is the only doctor who the ALJ assigns "great weight" to, standing alone, that non-examining evidence is insufficient to constitute substantial evidence. *See Swindle*, 914 F.2d at 226 n.3 (A non-treating physician's opinion "taken alone does not constitute substantial evidence to support an administrative decision."); *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of nonexamining, reviewing physicians . . . when contrary to those of examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence"); *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) ("We accord little weight to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient." (citing *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir. 1980))).

Importantly, the Commissioner does not provide this court with any authority as to why Dr. Levine's opinion should be afforded special weight over any other paper review doctor simply because he attended the evidentiary hearing. The Commissioner does cite to *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986)

(Doc. 12 at 18); however, Mr. Adams's case is significantly dissimilar from *Jones*. In *Jones*, the physician upon which the ALJ ultimately relied, had at least an examining relationship of the claimant. *Jones*, 810 F.2d at 1005. Additionally, the Eleventh Circuit noted that "several consultants reviewed the medical evidence" and reached the same conclusion. *Id.* In sharp contrast here, the ALJ relied only on one paper review doctor to substantiate his RFC. Finally, in *Jones*, the ALJ properly discredited the opinion of the treating physician, which as stated above, has not been done in Mr. Adams's case.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is not supported by substantial evidence and the ALJ did not apply the correct legal standards.[12] Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this the ___ day of August, 2016.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[12] In light of the court's decision to remand, it does not reach the remaining issues presented by the parties in this appeal.